IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03335-MEH

BRIGHTSPOT SOLUTIONS, LLC,

     Plaintiff,

v.

A+ PRODUCTS, INC., and
MICHAEL SCHREIBER,

     Defendants.

_____

**ORDER**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff Brightspot Solutions, LLC ("Plaintiff") asserts ten claims against only Defendant A+ Products, Inc. ("Defendant A+") and two clams against both Defendant A+ and Defendant Michael Schreiber concerning the alleged breach of promises regarding the manufacture of products. ECF 28. Plaintiff's claims are for breach of contract, fraudulent misrepresentation, unjust enrichment, promissory estoppel, express and constructive bailment, vicarious liability, negligent supervision and retention, wrongful interference with prospective economic advantage, and civil theft. *Id.* Defendants have filed the present motion to dismiss ("Motion"), seeking dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). ECF 33. The Motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. As set forth below, the Motion is granted.

## FACTUAL BACKGROUND

The following are material, factual allegations (as opposed to legal conclusions, bare assertions, or conclusory allegations) made by Plaintiff in its Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a company whose "primary business is the development, sales, and marketing of new products." Am. Compl. ¶ 11. At issue in this case are two of Plaintiff's products: (1) the Spotless Swing Premium Multi-Use Golf Towel ("Spotless Swing") and (2) the Spotless Paw Cleaning Glove ("Spotless Paw"). *Id.* ¶ 12. Defendant A+ has offices in the United States, Canada, and China, and "sells a broad array of products, focusing on metal and plastic hardware, fasteners, buckles, and trim pieces." *Id.* ¶¶ 13–14. Plaintiff "engaged A+," not for the products it makes, but "to obtain its services, which . . . include sourcing, logistics, and third-party services." *Id.* ¶ 15. Plaintiff obtained information about these services from Defendant A+'s website. *Id.* ¶¶ 15–17. Defendant A+ specifically advertises on its website "that with respect to sourcing, it specializes in locating vendors in the Asia-Pacific region 'to cover all aspects of the manufacturing process, from the smallest components to final retail-ready goods.'" *Id.* ¶ 17. The website also declares that Defendant A+ "'help[s] customers who have a new item they want to have manufactured overseas, but [sic] have no idea where to start.'" *Id.* ¶ 19. The Court notes that the Amended Complaint contains numerous other examples of representations made on the website, but the specifics of such statements are not material to resolution of this Motion. *Id.* ¶¶ 20–26.

Plaintiff contends that Defendant A+ acted consistently with its website's representations in agreeing to provide the products and services giving rise to this civil action, including (1) contracting with a supplier to obtain the raw materials necessary for

producing those products; (2) invoicing [Plaintiff] for the cost of those materials as well as shipping and import duties; (3) locating, managing[, and] contracting with the manufacturer to create products according to [Plaintiff's] requirements; and (4) generally overseeing, in exchange for the payment of funds by [Plaintiff], the full spectrum of activities that ended with, or was to end with, delivering the completed goods to [Plaintiff] in the state of Colorado.

*Id.* ¶ 27.

"In reliance upon these representations, and the parties' long-term course of dealing, [Plaintiff] contracted with [Defendant] A+ for the manufacture and delivery of the Spotless Swing and Spotless Paw." *Id.* ¶ 28. In fact, Plaintiff "paid for sufficient materials to have 11,300 Black Spotless Swing, 1,000 Red Spotless Swing, 1,000 Green Spotless Swing, and 2,400 Spotless Paw manufactured" by Defendant A+. *Id.* ¶ 29. Defendant A+ then contracted with a supplier to get the materials and invoiced Plaintiff for the cost of the materials and shipping and import duties. *Id.* ¶ 30. Defendant A+ selected a factory in China to manage the facilitation of the production of Plaintiff's products. *Id.*

Plaintiff alleges that Defendant A+ did not produce the amounts of the products listed above; rather, it manufactured "only 4,566 Black Spotless Swing, 948 Red Spotless Swing, 1,026 Green Spotless Swing, and 1[,]152 Spotless Paw." *Id.* ¶ 33. Of these, around 576 Spotless Paw were defective because they did not meet Plaintiff's requirements. *Id.* ¶ 34. Defendant A+ eventually manufactured another 576 Spotless Paw, but the materials for the first batch were wasted. *Id.* ¶ 36. Also, Plaintiff asserts that Defendant A+ "lost, wasted, or misused enough material to make 1[,]248 Spotless Paw." *Id.* ¶ 35. In total, then, 1,824 Spotless Paw were not made. *Id.* ¶ 36. Additionally, Defendant A+ "lost, wasted, or misused enough material to make between 2,794-3,110 Spotless Swing." *Id.* ¶ 37.

In prior business dealings between the parties, when materials were shipped to a Chinese factory in excess of the initial purchase order, "those surplus materials were secured and cared for

at the direction of A+, and were subsequently used to fulfill later purchase orders submitted by" Plaintiff. *Id.* ¶ 42. "In light of this course of dealing and the surrounding circumstances," Plaintiff believed that Defendant A+ would have preserved any excess material not used in manufacturing. *Id.* ¶ 43.

Apparently, Defendant A+ promised to "fulfill a subsequent order for the manufacture [of] 3,700 Spotless Swing, based on fabric already purchased by" Plaintiff, but Defendant A+ refused to fulfill this order. *Id.* ¶ 44. This purchase order came at the invitation of an attorney of Defendant A+. *Id.* ¶ 45. Responding to that invitation, Plaintiff submitted the order to Katharine Lucena, "an employee who had accepted prior purchase orders from [Plaintiff] over the course of their many years of conducting business." *Id.* ¶ 46. Originally, Ms. Lucena accepted the purchase order but purportedly rejected it four days later. *Id.* Plaintiff believes that "these agents of [Defendant] A+ expressly invited and accepted this latest order to induce [Plaintiff] to agree [to] resolve certain outstanding obligations owed by" Defendant A+ to Plaintiff, *id.* ¶ 47, since Plaintiff's request to fulfill the latest purchase order occurred while the parties were negotiating, *id.* ¶ 48. Those negotiations resulted in a settlement agreement between Defendant A+ (signed by Mr. Schreiber) and Plaintiff. *Id.* ¶ 49.

The settlement agreement involved Defendant A+ writing a check to Plaintiff for some amount of money. However, the check (signed by Mr. Schreiber) "was drawn on a non-existent bank account, and caused [Plaintiff's] principal, Scott Salzman[,] to suffer the embarrassment of having what was at that time a fraudulent check rejected by his bank." *Id.* ¶ 50. Following these events, Plaintiff alleges that Mr. Schreiber made "a series of threatening and malicious statements" to Mr. Salzman regarding the parties' disputes. *Id.* ¶ 52. For instance, after Mr. Salzman told Mr. Schreiber that his actions were going to put Mr. Salzman's out of business, Mr. Schreiber sent an

email to Mr. Salzman stating, "These are the consequences of burning bridges." *Id.* ¶ 53. This email, sent on July 28, 2020, also described that Mr. Schreiber had "directed Ms. Lucena to send the email to" Mr. Salzman about rejecting the purchase order and "terminating [Defendant A+'s] business relationship with" Plaintiff. *Id.* ¶ 56.

## PROCEDURAL BACKGROUND

Plaintiff initiated this lawsuit on September 22, 2020 in the District Court for the County of Boulder, State of Colorado. ECF 5. Defendant A+ was the only named defendant at that time. On November 9, 2020, Defendant A+ removed the case to this Court. ECF 1. On November 12, 2020, the Court issued an order to show cause to Defendant A+ as to whether this Court had subject matter jurisdiction. ECF 7. After receiving Defendant A+'s response on November 16, 2020, ECF 10, the Court discharged the order to show cause, ECF 12. Contemporaneously with its response, Defendant A+ filed a motion to dismiss. ECF 11. On December 7, 2020, Plaintiff responded by filing a motion to exclude extrinsic evidence attached to the motion to dismiss (ECF 18) and a motion for extension of time to file a response to the motion (ECF 19). The Court heard oral argument on both motions on December 21, 2020. ECF 23. Following oral argument, the Court granted both motions and ordered Plaintiff to file a response on or before January 4, 2021. *Id.*

On January 4, 2021, Plaintiff attempted to file an amended complaint. ECF 24. However, on January 6, 2021, the Court struck that filing since the time to file an amended complaint as a matter of course had elapsed. ECF 25. The Court instructed Plaintiff to file a motion for leave to amend on or before January 8, 2021 and to comply with the Local Rules when doing so. *Id.* That same day, Plaintiff filed a notice of amended pleading in conformance with the Local Rules, ECF 26, but failed to file a motion for leave to amend. On January 7, 2021, in the interests of justice

and judicial efficiency, the Court *sua sponte* gave Plaintiff leave to amend and directed Plaintiff to file a clean copy of its Amended Complaint on or before January 12, 2021.  ECF 27.  Because the Court accepted the amended pleading, the Court denied the pending motion to dismiss as moot. *Id.*  Plaintiff filed the clean copy on January 11, 2021.  ECF 28.  This new pleading named Mr. Schreiber as an additional defendant.  *Id.*  Following being granted an extension of time to answer or otherwise respond to the Amended Complaint, ECF 31, Defendants filed the current Motion on February 8, 2021, ECF 33.

## LEGAL STANDARDS

### I.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id. Twombly* requires a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 680.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not

nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## II.     Dismissal Pursuant to Fed. R. Civ. P. 9(b)

Pursuant to Fed. R. Civ. P. 9(b), a more stringent pleading standard is mandated for certain claims, such as fraud or misrepresentation. "For any claim alleging fraud, the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Tech. Corp. Secs. Litig.*, 147 F.Supp.2d 1049, 1054 (D. Colo. 2001) (citing Fed. R. Civ. P. 9(b)). Thus, with regard to Plaintiff's claim for fraudulent misrepresentation, Plaintiff must plead "the who, what, when,

where, and how of the alleged fraud" or in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006); *see also HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011) ("a plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice."). In this District, this is required regardless of whether the alleged fraud is an active representation or a passive omission. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F.Supp.2d 1103, 1114 (D. Colo. 2010).

## ANALYSIS

As mentioned earlier, Plaintiff has asserted a total of twelve claims. Defendants seek dismissal of all claims with prejudice. The Court will address the claims in the same order as in the parties' briefing.

### I.    Breach of Contract (First Claim for Relief)

As alleged by Plaintiff, there are essentially two separate instances of breach of contract. First, Plaintiff contends that it "paid for sufficient materials to have 11,300 Black Spotless Swing, 1,000 Red Spotless Swing, 1,000 Green Spotless Swing, and 2,400 spotless Paw manufactured by [Defendant] A+, through its Chinese factory." Am. Compl. ¶ 29. Defendant A+ breached that agreement by failing "to perform its contractual obligation to produce the Spotless Paw and Spotless Swing in a sufficient quantity and with sufficient workmanship for the amount of raw materials that were purchased by" Plaintiff. *Id.* ¶ 71. To be consistent with Defendant's reference to these allegations, the Court will refer to this alleged contract and breach as the "Insufficient

Quantity Alleged Breach."[1]  Second, Defendant A+ invited Plaintiff to agree to a purchase order for the manufacture of 3,700 Spotless Swing, "based on fabric already purchased" by Plaintiff.  *Id.* ¶¶ 44–45.  Four days later, Defendant A+ reneged on its promise to fulfill that purchase order.  *Id.* ¶ 46.  Plaintiff alleges that Defendant A+ breached that agreement by failing "to perform its contractual obligation to produce goods in conformance with the final purchase order tendered by [Plaintiff] and accepted by [Defendant] A+."  *Id.* ¶ 72.  The Court will refer to this alleged contract and breach as the "Final Purchase Order."

Under Colorado law, to establish a claim for breach of contract, a plaintiff must allege the following elements: (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  Additionally, "the terms of a contract must be expressed with a reasonable certainty."  *Am. Min. Co. v. Himrod-Kimball Mines Co.*, 235 P.2d 804, 807 (Colo. 1951).

A.      Insufficient Quantity Alleged Breach

Regarding the Insufficient Quantity Alleged Breach, Defendants challenge whether Plaintiff has sufficiently alleged the existence of a contract, Plaintiff's performance, and Defendant A+'s breach.  Mot. at 6.  Plaintiff objects to these challenges, arguing that the Amended Complaint is replete with the specific terms of the contract, Plaintiff's payment under the contract, and Defendant A+'s failure to perform.  Resp. at 5.

Before the Court can even consider whether either party performed under the alleged contract, the Court must first determine whether Plaintiff properly alleges the existence of a

---

[1] The use of Defendant's terms is simply for sake of ease and consistency and is not to be construed as an adoption of any argument or particular viewpoint.

contract.  Plaintiff asserts that the specific terms of the contract are found in paragraph twenty-

seven of the Amended Complaint.  That paragraph states,

> A+ acted consistently with the representations made on its website in agreeing to
> provide the products and services giving rise to this civil action, including (1)
> contracting with a supplier to obtain the raw materials necessary for producing
> those products; (2) invoicing BrightSpot for the cost of those materials as well as
> shipping and import duties; (3) locating, managing; contracting with the
> manufacturer to create products according to BrightSpot's requirements; and (4)
> generally overseeing, in exchange for the payment of funds by BrightSpot, the full
> spectrum of activities that ended with, or was to end with, delivering the completed
> goods to BrightSpot in the state of Colorado.

Am. Compl. ¶ 27.  Moreover, Plaintiff alleges that it contracted with Defendant A+ for the

manufacture of Spotless Swing and Spotless Paw (*id.* ¶ 28) in certain amounts and colors (*id.* ¶

29).  Resp. at 5.

However, the Amended Complaint does not contain those assertions precisely.  Paragraph

twenty-nine states that Plaintiff "paid for *sufficient materials* to have" certain numbers of products

manufactured.  Am. Compl. ¶ 29.  In other words, it does not say that Defendant A+ agreed to

manufacture those quantities.  Plaintiff wants the Court to make the inference that when Defendant

A+ did not make the specified amount of product that it breached an agreement to do so.  But the

Amended Complaint is devoid of any such allegation.  "The law is clear that although the parties

may intend to enter into a contract, if essential terms are omitted from their agreement, or if some

of the terms included are too indefinite, no legally enforceable contract will result." *Ellis Canning

Co. v. Bernstein*, 348 F. Supp. 1212, 1223 (D. Colo. 1972).  The Insufficient Quantity Alleged

Breach hinges on Defendant A+ not manufacturing an expected amount of product, making the

quantity of product an essential term of the agreement; yet, the Court cannot determine, as

currently pleaded, the existence of a contract for Defendant A+ to manufacture any particular

amount.  Certainly, the allegations as a whole show that the parties reached some agreement, but

the terms are too indefinite to find that Plaintiff has plausibly alleged the existence, let alone breach of, a contract. As such, Plaintiff's claim as to the Insufficient Quantity Alleged Breach is dismissed.

  B. <u>Final Purchase Order</u>

  Like the Insufficient Quantity Alleged Breach, Defendants argue that no contract with respect to the Final Purchase Order has been formed nor has Plaintiff demonstrated performance even if one had been created. Mot. at 8–10. Plaintiff contends that a contract was clearly formed because "it made a request, supported by consideration in the form of a promise to pay money, to A+ to produce 3,700 Spotless Swing products, and an authorized agent of A+ agreed on behalf of A+ to file the order." Resp. at 8.

  As before, the Court finds Plaintiff's allegations insufficient to support the existence of a contract. Defendants emphasize their belief that Plaintiff's demand was simply a "request to fulfill" a purchase order and that there was no "meeting of the minds" as to the purchase order. Mot. at 9. However, taking the allegations in the Amended Complaint as true, Plaintiff made a request for Defendant A+ to manufacture 3,700 Spotless Swings based on fabric already purchased by Plaintiff. Am. Compl. ¶ 44. That request was submitted in the form of a purchase order to Ms. Lucena, "an employee who had accepted prior purchase orders from [Plaintiff] over the course of their many years of conducting business." *Id.* ¶ 46. Ms. Lucena first "accepted" the purchase order but later rejected it four days later. *Id.* These actions are sufficient for a showing of "mutual assent to an exchange between competent parties—where an offer is made and accepted—regarding a subject matter which is certain." *PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp.2d 1219, 1224 (D. Colo. 2009) (citing *Indus. Prods. Int'l v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997)).

Yet, that is not all that is required for the formation of a contract. There also must be legal consideration. *Id.* Under Colorado law, "[a] benefit to the promisor or detriment to the promisee can constitute consideration, however slight." *W. Fed. Sav. & Loan Ass'n v. Nat'l Homes Corp.*, 445 P.2d 892, 897 (1968). Despite that low bar, "[a] unilateral promise is not sufficient consideration for creating an enforceable contract." *PayoutOne*, 602 F. Supp. 2d at 1224. Allegations in the Amended Complaint leave only the impression that Defendant A+ made a unilateral promise to make 3,700 Spotless Swing. Although Plaintiff's Response indicates that the consideration to support that promise was a promise from Plaintiff to pay money, that allegation is not in the Amended Complaint. The dearth of any other allegations concerning Plaintiff's consideration warrants dismissal of Plaintiff's claim.

## II.   Fraudulent Misrepresentation (Second Claim for Relief—Both Defendants)

Defendants argue for dismissal of the fraudulent misrepresentation claim primarily on the basis that Plaintiff did not satisfy Fed. R. Civ. P. 9(b)'s heightened pleading standard. Mot. at 11; Reply at 7. Rule 9(b)'s heightened standard requires the plaintiff to plead the fraud claim with particularity. *Tara Woods Ltd. Partnership v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010). "This requires the pleader to allege 'the who, what, when where, and how of the alleged fraud'—in other words, 'the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Id.* (quoting *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006)).

Under Colorado law, a claim for fraudulent misrepresentation has five elements: (1) the defendant made a false representation of a material fact, (2) the one making the representation knew it was false, (3) the person to whom the representation was made was ignorant of the falsity, (4) the representation was made with the intention that it be acted upon, and (5) the reliance

resulted in damage to the plaintiff. *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013). As to damages, a plaintiff does not need to demonstrate damages with absolute certainty, but "damages cannot be based on mere speculation or conjecture." *W. Cities Broad., Inc. v. Schueller,* 849 P.2d 44, 48 (Colo. 1993) (quotations omitted).

Defendants focus primarily on the fifth element, namely whether Plaintiff has properly pleaded reliance resulting in damages. Mot. at 12 (Plaintiff's "alleged reliance and resulting damages are completely divorced from this alleged misrepresentation."); Reply at 7–8 (Plaintiff's allegations do not satisfy Rule 9(b) because they are "only conclusory allegations regarding justified reliance, materiality, causation, and damages."). Plaintiff responds that it has "alleged sufficient facts to show that it suffered damages from lost profits and the inability to forgo alternative manufacturers, creating a delay that implicates the time value of money as well as the inability to continue having a supply for its customers." Resp. at 13.

Plaintiff's fraudulent misrepresentation claim concerns the Final Purchase Order, the circumstances of which the Court has already addressed. As relevant to this claim, Plaintiff asserts that "agents of [Defendant] A+ expressly invited and accepted th[e Final Purchase Order] to induce [Plaintiff] to agree [to] resolve certain outstanding obligations owed by" Defendant A+ to Plaintiff. *Id.* ¶ 47. Plaintiff further contends that Defendant A+ did not have the present intent to perform the obligation at the time the representation was made. *Id.*

To demonstrate the fifth element of a fraudulent misrepresentation claim, the plaintiff must establish "its three discrete sub-parts, [namely] requiring the plaintiff to prove separately actual reliance, the reasonableness of that reliance, and that the plaintiff's reliance caused its damages." *Bristol Bay Productions, LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013). As such,

"fraud . . . is not actionable where no damage is shown." *Slide Mines v. Denver Equip. Co.*, 148 P.2d 1009, 1011 (Colo. 1944).   On that ground, the Court finds Plaintiff's allegations deficient.

"Fraud cannot be predicated upon the mere non-performance of a promise or contractual obligation, or upon failure to fulfill an agreement to do something at a future time." *State Bank of Wiley v. States*, 723 P.2d 159, 160 (Colo. App. 1986) (internal citations omitted). So, Plaintiff's claim must be based on the notion that Defendant A+, through its agents, deliberately falsified its intention to induce reliance. *Nelson v. Gas Research Institute*, 121 P.3d 340, 343 (Colo. App. 2005). The only way that makes sense on the allegations in the Amended Complaint is in the context of inducing Plaintiff to enter into the settlement agreement. Otherwise, this claim would simply be founded on Defendant A+'s non-performance which is not permitted under Colorado law. Despite this, Plaintiff adamantly argues that its "damages and relief are not tied to the settlement agreement, but instead, stand separate and apart, and constitute lost profits from the unfulfilled order." Resp. at 11. Therefore, if the damages are based solely on the lost profits from the failure to perform, Plaintiff has not stated a claim for relief. To the extent Plaintiff means for this statement to incorporate damages related to the settlement agreement, those damages have not been adequately alleged or described. Under any scenario, Plaintiff's claim must be dismissed.

### III.   Unjust Enrichment (Third Claim for Relief)

The claim of "unjust enrichment is a judicially-created remedy intended to prevent one party from unfairly benefitting to the detriment of another party." *Jorgensen v. Colo. Rural Properties, LLC*, 226 P.3d 1255, 1258 (Colo. App. 2010). "The elements of unjust enrichment are: (1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain the benefit without paying for it." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008).

Defendants argue that they cannot ascertain any alleged benefit and, even if there was one, how it would be at Plaintiff's expense. Mot. at 13. As to the Final Purchase Order, Defendant asserts that Plaintiff has not alleged that it paid any money or that Defendant A+ received a benefit in declining to fulfill the order. *Id.* For the Insufficient Quantity Alleged Breach, Defendants contend that Defendant A+ could not have benefited in producing more waste and fewer products. *Id.* at 13–14. Plaintiff responds by arguing that an unjust enrichment inquiry is inherently a factual one, and thus not appropriate for resolving on a motion to dismiss. Resp. at 13. Additionally, Plaintiff describes two benefits to Defendant A+. *Id.* at 14–15.

On the issue of the Final Purchase Order, the Court agrees with Defendants that Plaintiff has not plausibly pleaded the second element, that is that Defendant A+ received a benefit. Plaintiff's allegations consist of it being induced into entering into a settlement agreement only to have Defendant A+ back out of the Final Purchase Order. The Amended Complaint specifies that the settlement agreement involved the resolution of Defendant A+'s outstanding obligations to Plaintiff. Am. Compl. ¶ 47. However, the characterization that Plaintiff adds in its Response is not present in the Amended Complaint. In the Response, Plaintiff describes the benefit to Defendants as "the resolution of an underlying claim for a lower amount that would not have been reached but-for the misrepresentation that the final purchase order would be fulfilled." Resp. at 15. Importantly, those details are absent from the Amended Complaint. As such, they are additional allegations that the Court need not consider now. *See Ramsey v. Southwest Correctional Med. Grp., Inc.*, 2019 WL 3252181, at *10 (D. Colo. July 19, 2019) ("[A] plaintiff cannot avoid dismissal by adding new allegations in a response brief."). As the Amended Complaint currently stands, the allegations are insufficient to state a claim for relief as to the Final Purchase Order for failure to plead the benefit received by Defendants.

Regarding the Insufficient Quantity Alleged Breach, it is a closer call.  Plaintiff alleges that it paid for enough materials to manufacture a certain number of Spotless Swing and Spotless Paw. Am. Compl. ¶ 29.  Plaintiff then argues that two possibilities are likely for why Defendant A+ did not actually manufacture those numbers: either due to waste, destruction, or disposal or that the materials "were wrongfully converted, stolen, or misappropriated by the Chinese manufacturer." *Id.* ¶ 40.  It is unclear how losing materials to waste constitutes a benefit to Defendants, and Plaintiff does not cite authority for that proposition.  Nor is it clear how Defendant A+ benefits if the Chinese manufacturer converts, steals, or misappropriates the material.  Both contentions would need further explanation for the Court to be able to discern the benefit alleged to Defendant A+.  Finally, to the extent Plaintiff alleges that leftover fabric is a benefit to Defendant A+, *id.* ¶ 66, a claim to that benefit is likely mooted since Defendant A+ has offered to ship the fabric back to Plaintiff, *id.* ¶ 65.  For these reasons, the Court finds the Plaintiff has not plausibly pleaded a claim for unjust enrichment as to the Insufficient Quantity Alleged Breach.

## IV.      Promissory Estoppel (Fifth Claim for Relief)

"Promissory estoppel is an equitable doctrine, providing a remedy for individuals who rely to their detriment, under certain circumstances, on promises, despite the absence of any mutual agreement by the parties on all essential terms of a contract."  *Schwartz v. Bank of Am., N.A.*, No. 10-cv-01225-WYD-MJW, 2011 WL 1135001, at *8 (D. Colo. Mar. 28, 2011).  To state a claim for promissory estoppel under Colorado law, the plaintiff must demonstrate "(1) a promise, (2) that the promisor should have expected would induce action or forbearance by the promisee, (3) that the promisee did, in fact, reasonably rely on to the promisee's detriment, and (4) that must be enforced to prevent injustice."  *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016).

The parties dispute whether Plaintiff has plausibly pleaded the third element of whether Plaintiff changed its position to its detriment. *See McKinney v. OneWest Bank, FSB*, No. 12-cv-02645-WJM-BNB, 2013 WL 3381361, at *3 (D. Colo. July 8, 2013) ("[T]o be entitled to relief, a party must show that, to its detriment, *it changed its position* in justifiable reliance on the promise of another.") (quotation omitted).   Plaintiff's promissory estoppel claim concerns only the Final Purchase Order.  Am. Compl. ¶ 90–92.  Hence, for the claim to survive, Plaintiff must plausibly plead that it detrimentally changed its position as to the promise to fulfill that order.

The Court finds that Plaintiff has not done so.  Plaintiff's allegations do not explain how it changed its position, let alone to its detriment, in agreeing to the Final Purchase Order.   Plaintiff now argues that "[t]he same facts that support reliance for purposes of fraud . . . support reliance for purposes of promissory estoppel."  Resp. at 16.  Thus, the Court infers that Plaintiff contends that it changed its position in terms of entering into the settlement agreement on the basis that Defendant A+ would fulfill the Final Purchase Order.  *Id.* at 10–11.  Yet, those allegations do not exist in the Amended Complaint.  Plaintiff does not explain exactly what its change of position was in agreeing to the settlement agreement nor the extent of its detriment.   Moreover, the allegation that Plaintiff forewent "efforts to obtain a replacement manufacturer for its goods," Am. Compl. ¶ 91, does not plausibly show how the alleged change in position was to Plaintiff's detriment.  Specifically, Plaintiff fails to plausibly plead how it was harmed in the four-day span from Defendant A+'s alleged acceptance of the Final Purchase Order to it reneging on the promise.

Finally, Plaintiff asserts in its Response that it "agreed to have all [its] raw materials stored at the Chinese manufacturer, and thus caused Plaintiff to rely . . . that those materials would be handled with reasonable care."  Resp. at 16.  However, such an assertion concerns the Insufficient Quantity Alleged Breach, not the Final Purchase Order.  There are no allegations that Plaintiff paid

for the materials concerning the Final Purchase Order, so there is no allegation that there were any materials shipped to the Chinese manufacturer in connection with that order.  The Amended Complaint plainly states that the claim for promissory estoppel stems from Defendant A+ "agreeing to fulfill the final purchase order."  Am. Compl. ¶ 90.  Plaintiff cannot in a response brief try to expand that claim to include the Insufficient Quantity Alleged Breach.  Accordingly, the claim for promissory estoppel must be dismissed.

## V.     Express and Constructive Bailment (Fourth Claim for Relief) and Vicarious Liability Claims (Sixth Through Ninth Claims for Relief)

Plaintiff makes a single claim for express and constructive bailment and four separate vicarious liability claims against Defendant A+.  Defendants seek dismissal of all claims because these claims are theories of liability and cannot be asserted as stand-alone claims.  Mot. at 15–16. Plaintiff opposes this contention.  Resp. at 16–20.

The Court understands that Defendants are not (at least at this stage) arguing that they are not liable under these theories.  Rather, they contend that Plaintiff has not properly pleaded the claims that would make them liable.  On this narrow point, the Court agrees.  As to the bailment claim, bailment simply refers to the relationship between individuals that may give rise to a duty of care. *See Christensen v. Hoover*, 643 P.2d 525, 529 (Colo. 1982) ("Once a bailment relationship has been established, the law imposes upon the bailee certain duties and obligations with respect to the bailed property in his possession.").  That relationship alone, though, does not give rise to a stand-alone claim.  Instead, as is alleged in this case, "[w]here goods have been damaged or destroyed while in the possession of a bailee, the bailor may bring a claim for breach of contract *or* may bring a tort claim (for negligence or, perhaps, for conversion)." *Foster v. Bd. of Governors of the Colo. State Univ. Sys. by and on behalf of Colo. State. Univ.*, 342 P.3d 497, 503 (Colo. App. 2014) (emphasis in original).   Thus, the underlying claim concerning a bailment must sound in

contract or in tort. *Id.* (". . . such a claim is pled in contract or in tort"). Plaintiff even appears to recognize this. Am. Compl. ¶ 86 ("A+ is both directly liable under a negligent retention claim . . . and under a breach of contract claim.").

Despite this, Plaintiff cites two cases for the notion that a constructive bailment is a stand-alone claim. However, these cases, *Christensen v. Hoover* and *Kessman v. City and Cnty. of Denver*, 709 P.2d 975, 976 (Colo. App. 1985), concerned bailment relationships with underlying tort claims. In *Christensen*, the plaintiff brought claims for negligence and conversion, 643 P.2d at 527–28, and in *Kessman*, the plaintiff asserted a claim for negligence, 709 P.2d at 976. Unlike the plaintiffs in those cases, Plaintiff's claim here is for express and constructive bailment. The Court finds no authority holding that Colorado law supports such an independent claim. Rather, Plaintiff may assert that Defendant A+ is liable pursuant to a bailment relationship but must do so with the underlying claim sounding in contract or tort. *See Foster*, 342 P.3d at 503. Consequently, the bailment claim must be dismissed.

The same is true for the vicarious liability claims. As the Court mentioned, Plaintiff has brought four vicarious liability claims: two under the doctrine of respondeat superior (Sixth and Ninth Claims for Relief) and two under the notions of actual and apparent authority (Seventh and Eighth Claims for Relief). Although Defendants' argument as to these claims is the same as for the bailment claim, Plaintiff does not cite any authority in its Response for the idea that vicarious liability claims are stand-alone claims. Conversely, Defendants have cited cases suggesting that vicarious liability claims are not independent claims. *Baker v. Baxa Corp.*, 2011 WL 650002, at *1 (D. Colo. Feb. 11, 2011) ("The doctrine of *respondeat superior* is not a substantive claim for which relief can be afforded; it is a legal theory by which a party who has not committed a substantive legal wrong can be held liable for a legal wrong committed by another."); *Grease*

*Monkey Intern., Inc. v. Montoya*, 904 P.2d 468, 473 (Colo. 1995) ("A master may also be liable for *tortious* conduct by a servant, as he would be for the conduct of any agent, whether servant or not.") (emphasis added).  The Court finds such authority persuasive and has been presented with no basis to hold otherwise.

In so finding, the Court does not suggest that vicarious liability allegations have no place in Plaintiff's Amended Complaint.  As the court in *Baker* put it, "[t]his is not to say that [Plaintiff's] *respondeat superior* allegations do not belong in the Complaint, but simply that they are not properly styled as a discrete 'claim' for relief."  2011 WL 650002, at *1.  Accordingly, Plaintiff's vicarious liability claims are dismissed.

## VI.    Negligent Supervision and Retention (Tenth Claim for Relief)

Plaintiff's Tenth Claim for Relief is for negligent supervision and retention.  Am. Compl. ¶¶ 112–17.  "Colorado appears to treat the claims of negligent supervision and negligent retention as the same."  *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1146 (D. Colo. 2019) (internal quotations omitted).  Thus, the Court will refer to this claim as "negligent supervision." To state a claim for negligent supervision, the plaintiff must prove that "(1) the defendant owed the plaintiff a legal duty to supervise others; (2) the defendant breached that duty; and (3) the breach of the duty caused the harm that resulted in damages to the plaintiff."  *Settle v. Basinger*, 411 P.3d 717, 723 (Colo. App. 2013).

Defendants argue that such a claim under Colorado law arises only in the employment and agency relationship contexts.  Mot. at 17.  Because Plaintiff's allegations concern a possible bailment relationship, Defendants urge the Court to dismiss the claim as incompatible with Colorado law.  *Id.* at 18.  Plaintiff responds that Defendants' "failure of imagination . . . would interminably freeze in place the current state of the common-law [sic] to only those cases heard by

courts." Resp. at 20. In so arguing, Plaintiff concedes (or at least does not rebut) that negligent supervision claims have never been extended to instances like this case. This conforms with the Court's review of case law describing negligent supervision claims in the context of employment or agency relationships. *E.g.*, *Kahland v. Villarreal*, 155 P.3d 491, 493 (Colo. App. 2006) ("[A] claim for negligent hiring, training, and supervision is based on the *employer's* failure to discovery that the *employee* created an undue risk of harm to others.") (emphasis added). Plaintiff's creative thinking may very well push the boundaries of Colorado's common law, but it will not do so here. A federal court should apply the state common law as it is and leave the crafting of such law to the respective state courts. As such, Plaintiff's claim for negligent supervision is dismissed.

**VII.    Wrongful Interference with Prospective Economic Advantage (Eleventh Claim for Relief—Both Defendants)**

The elements of a claim for tortious interference are: (1) that the defendant induced a third-party to refuse to enter into or refuse to continue a contractual relationship with the plaintiff; (2) that the defendant did so intentionally; and (3) that the defendant used improper means to do so. *L-3 Communications Corp. v. Jaxon Engineering & Maintenance, Inc.*, 2013 WL 1231875, at *2 (D. Colo. Mar. 27, 2013) (citing *MDM Group Ass'n Inc.v. CX Reinsurance Co.*, 165 P.2d 882, 886 (Colo. App. 2007)).

Defendants seek dismissal because Plaintiff does not allege any third parties "with whom a prospective economic advantage would result, nor . . . any facts suggesting A+ specifically induced a particular third-party to cease continued business relations with" Plaintiff. Mot. at 19. Plaintiff counters that only prospective economic relation is required. Resp. at 21 (citing *Employment Television Enterprises, LLC v. Barocas*, 100 P.3d 37, 45 (Colo. App. 2004)).

In *Barocas*, the Colorado Court of Appeals found that the plaintiff did not need to show that the defendants induced a thirty party to abandon its business relationship with them since

"[t]ortious interference can result solely from actions directed toward the plaintiff intended to prevent that party from acquiring or continuing a prospective relation with a third party." 100 P.3d at 45.  What makes that finding distinguishable from this case is that the Court knew the exact third party in *Barocas*.  Here, Plaintiff merely alleges that it "had customers who had previously purchased [its] products."  Am. Compl. ¶ 120.  The allegations do not elaborate on the customers' identities.  For a tortious interference claim, the plaintiff must plead that the defendant interfered with the prospective economic relation as to a particular third party.  *E.g.*, *Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1059–60 (D. Colo. 2017) (dismissing plaintiff's claim for failure to state a claim against John and Jane Doe defendants because he did "not plead facts plausibly suggesting a reasonable likelihood of contracting with a particular third party").

Another court in this District faced a similar situation.  In *Cunningham Lindsey U.S. Inc. v. Crawford & Co.*, the plaintiff asserted a claim for tortious interference with prospective economic advantage.  No. 17-cv-03041-CMA-KLM, 2018 WL 6307865, at * 6 (D. Colo. Dec. 3, 2018), *report and recommendation adopted*, 2019 WL 120762 (D. Colo. Jan. 7, 2019).  The court found that the plaintiff's allegations amounted to nothing more than assertions "that existing and prospective business relationship were the intended target of Defendant[']s alleged improper tactics."  *Id.*  In other words, the plaintiff did not identify "any particular third parties with which it had existing or prospective business relationships."  *Id.*  Consequently, the court dismissed the claim for failure to allege sufficient facts to satisfy the elements of the claim.  *Id.*  Like that case, Plaintiff has vaguely alleged interference with previous customers but has not identified them.  Such allegations are insufficient to sustain a claim for tortious interference with prospective economic advantage.  Accordingly, Plaintiff's Eleventh Claim for Relief must be dismissed.

## VIII.   Civil Theft (Twelfth Claim for Relief)

"To state a claim for civil theft, a plaintiff must allege the elements of criminal theft: that the defendant knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception, and acts intentionally or knowingly in ways that deprive the other person of the property permanently." *Seale v. Peacock*, No. 19-cv-03559-KMT, 2020 WL 5076749, at *2 (D. Colo. Aug. 27, 2020) (quoting *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016)) (quotation marks omitted).  Importantly, "civil theft, like criminal theft, requires the *specific intent* of the defendant to permanently deprive the owner of the benefit of the property." *Id.* (emphasis added).  It is this intent that Defendants argue is absent from Plaintiff's allegations.  Mot. at 19–20.

Plaintiff's civil theft claim concerns the "surplus raw materials" allegedly retained by Defendant A+.  Am. Compl. ¶ 124.  Plaintiff argues that "Defendants' manufacturer . . . lost, stole, or misappropriated . . . valuable surplus raw materials."  Resp. at 22.  But that assertion goes to the actions, and possibly the intent, of the Chinese manufacturer, not Defendant A+.  Allegations in the Amended Complaint confirm that understanding.  Am. Compl. ¶ 40 ("[T]hose surplus materials were wrongfully converted, stolen, or misappropriated *by the Chinese manufacturer*.") (emphasis added).  The only allegation from which to glean Defendant A+'s intent is that Defendant A+ "inten[ded] to deprive Plaintiff permanently of the intended use or benefit of those things of value."  *Id.* ¶ 125.  That allegation, though, is conclusory and insufficient to establish a civil theft claim.  *Scott v. Scott*, 428 P.3d 626, 633 (Colo. App. 2018) (finding that a single conclusory statement was inadequate to state a claim for civil theft).  Therefore, Plaintiff's civil theft claim must be dismissed.

IX.   **Leave to Amend**

Defendants essentially argue that this is Plaintiff's second bite of the apple and that all claims should be dismissed with prejudice.  Mot. at 20.  Plaintiff does not address this argument, instead focusing on whether each claim should be dismissed at all.  In other words, Plaintiff does not request that it be allowed to amend in the event that the Court grants the Motion.  Without such a request, the Court is inclined to dismiss all claims with prejudice.  However, Tenth Circuit precedent holds that "dismissal with prejudice is proper for failure to state a claim when 'it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him the opportunity to amend.'"  *Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)).  For half of the claims, the Court does not believe that allowing amendment would necessarily prove futile.  For instance, to the extent possible under Fed. R. Civ. P. 11, the pleading deficiencies identified here for the wrongful interference with prospective economic advantage claim likely can be cured through inclusion of sufficient third-party information.  Additionally, although Plaintiff has already amended once, Plaintiff did not have the benefit of a judicial ruling on the issues raised by Defendants.  Now it does.  Therefore, in the interest of justice and for lack of obvious futility, the Court *sua sponte* grants Plaintiff leave to amend its pleading as to the breach of contract, fraudulent misrepresentation, unjust enrichment, promissory estoppel, wrongful interference with prospective economic advantage, and civil theft claims.

Plaintiff's remaining claims are to be dismissed with prejudice.  Plaintiff did not dispute that the common law does not currently extend the claim for negligent supervision to Plaintiff's situation.  Allowing amendment on that claim would prove futile.  Additionally, the bailment and vicarious liability claims are not stand-alone claims and thus cannot be raised again.  However,

because they are theories of liability, Plaintiff may amend, through the current claims or through new ones, so that these theories are incorporated into the pleading but connected to proper underlying claims.

## **CONCLUSION**

Accordingly, the Motion [filed February 8, 2021; ECF 33] is **granted** as follows: dismiss without prejudice the First, Second, Third, Fifth, Eleventh, and Twelfth Claims for Relief and dismiss with prejudice the Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Claims for Relief. Plaintiff is granted leave to amend consistent with this Order and all applicable local and federal rules.

Entered this 5th day of April, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge