IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03335-MEH

BRIGHTSPOT SOLUTIONS, LLC,

      Plaintiff,

v.

A+ PRODUCTS, INC., and
MICHAEL SCHREIBER,

      Defendants.

_____

# ORDER
_____

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiff Brightspot Solutions, LLC ("Plaintiff") asserts ten claims against Defendant A+ Products, Inc. ("A+") and two claims against both Defendant A+ and Defendant Michael Schreiber concerning the alleged breach of promises regarding the manufacture of products. ECF 44. Plaintiff's claims are for breach of contract, fraudulent misrepresentation, unjust enrichment, promissory estoppel, express and constructive bailment, vicarious liability, negligent supervision and retention, wrongful interference with prospective economic advantage, and civil theft. *Id.* After a ruling on an initial motion to dismiss, the Court dismissed Plaintiff's prior complaint but permitted Plaintiff to amend. Plaintiff filed its Second Amended Complaint ("SAC") (ECF 44), and Defendants have filed a motion to dismiss ("Motion"), seeking dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). ECF 45. Subsequently, Defendants filed a partially opposed Motion to Vacate Scheduling Order and Stay Discovery. ECF 49. As set forth below, the Motion

is granted in part and denied in part, and the Motion to Vacate Scheduling Order and Stay Discovery is granted in part and denied in part as moot.

## FACTUAL BACKGROUND

The following factual allegations are drawn from Plaintiff's SAC and are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a company located in Colorado whose "primary business is the development, sales, and marketing of new products." SAC ¶ 15. A+ is a New Jersey corporation with offices in the United States, Canada, and China, and "sells a broad array of products, focusing on metal and plastic hardware, fasteners, buckles, and trim pieces." *Id*. ¶¶ 17–18. Defendant Michael Schreiber is the owner of A+. *Id*. ¶ 2. At issue in this case are two of Plaintiff's products: (1) the Spotless Swing Premium Multi-Use Golf Towel ("Spotless Swing") and (2) the Spotless Paw Cleaning Glove ("Spotless Paw"). *Id*. ¶ 16.

Plaintiff "engaged A+ . . . to obtain its services, which . . . include sourcing, logistics, and third-party services." *Id*. ¶ 19. Plaintiff received information about these services from A+'s website. *Id*. ¶¶ 19–20. On its website, A+ advertises that "it specializes in locating vendors in the Asia-Pacific region 'to cover all aspects of the manufacturing process, from the smallest components to final retail-ready goods.'" *Id*. ¶ 21. The Court notes that the SAC contains numerous other examples of representations made on the website, but the specifics of such statements are not material to resolution of this Motion. *Id*. ¶¶ 24–28. Plaintiff contends that A+ acted consistently with its website's representations

> in agreeing to provide the products and services giving rise to this civil action, including (1) contracting with a supplier to obtain the raw materials necessary for producing those products; (2) invoicing [Plaintiff] for the cost of those materials as well as shipping and import duties; (3) locating, managing[, and] contracting with the manufacturer to create products according to [Plaintiff's] requirements; and (4) generally overseeing, in exchange for the payment of funds by [Plaintiff], the full

spectrum of activities that ended with, or was to end with, delivering the completed goods to [Plaintiff] in the state of Colorado.

*Id.* ¶ 31.

"In reliance upon these representations, and the parties' long-term course of dealing, [Plaintiff] contracted with A+ for the manufacture and delivery of the Spotless Swing and Spotless Paw." *Id.* ¶ 32. Specifically, Plaintiff "paid for sufficient materials to have 11,300 Black Spotless Swing, 1,000 Red Spotless Swing, 1,000 Green Spotless Swing, and 2,400 Spotless Paw manufactured," and A+ "agreed to produce these amounts of products for an additional fee in addition to the cost of the raw materials." *Id.* ¶ 33. Plaintiff then sent "dozens of purchase orders . . . to A+ that included a line item for a separate fee that [Plaintiff] was paying for the Spotless Paw gloves and Spotless Swing towels, which were in addition to the cost of materials." *Id.* A+ then contracted with a supplier to get the materials and invoiced Plaintiff for the cost of the materials and shipping and import duties. *Id.* ¶ 34. A+ selected a factory in China to manage the facilitation of the production of Plaintiff's products. *Id.*

Plaintiff alleges that A+ did not produce the amounts of the products contracted for; rather, A+ "manufacture[d] only 4,566 Black Spotless Swing, 948 Red Spotless Swing, 1,026 Green Spotless Swing, and 1[,]152 Spotless Paw." *Id.* ¶ 37. Of the 1,152 Spotless Paw produced, 576 of them "were entirely defective because they did not meet [Plaintiff's] requirements." *Id.* ¶ 38. A+ eventually manufactured another 576 Spotless Paw, but the materials for the first batch were wasted and Plaintiff lost profit because the "missing surplus material" was never replaced. *Id.* ¶ 40. Plaintiff also asserts that A+ "misappropriated enough material to make 1,248 Spotless Paw," resulting in a total of 1,824 Spotless Paw that Plaintiff contracted for but never received. *Id.* ¶ 39. Additionally, A+ "misappropriated enough material to make between 2,794–3,110 Spotless Swing." *Id.* ¶ 41. Plaintiff believed that A+ would preserve any excess material not used in

manufacturing because, over the course of its prior dealings, A+ would "regularly update" Plaintiff to discuss how many Spotless Paw and Spotless Swing could be made when there was excess material. *Id.* ¶¶ 47–49.

Plaintiff's SAC alleges that A+ promised to "fulfill a subsequent order ["Final Purchase Order"] for the manufacture [of] 3,700 Spotless Swing, based on fabric already purchased by" Plaintiff. *Id.* ¶ 50. However, four days after accepting the Final Purchase Order, A+ "unsuccessfully attempted to rescind it" and ultimately refused to fulfill the order "despite [Plaintiff's] agreement to pay an additional fee to have those products produced." *Id.* ¶¶ 50, 64.

The "purchase order was the result of discussions between [Plaintiff] and a former attorney for A+ regarding a prior business dispute ["Air Mediator Dispute"] in which A+ had defectively manufactured a product for Plaintiff." *Id.* ¶ 51. During the negotiations regarding the Air Mediator Dispute, Plaintiff had rejected a settlement offer from Mr. Schreiber and informed Mr. Schreiber that "his and A+'s actions were going to put [Plaintiff] out of business." *Id.* ¶ 59. After Plaintiff rejected A+'s settlement offer, Plaintiff received an email from an employee of A+, Katherine Lucena, stating that A+ would "no longer be doing business" with Plaintiff and that it would "check with the factory on the remaining materials and see that they are shipped" to Plaintiff. *Id.* On that same day, Mr. Schreiber sent an email to Plaintiff stating "[t]hese are the consequences of burning bridges" and that A+ would no longer be working with Plaintiff. *Id.* ¶ 60.

The SAC further alleges that, during the negotiations for the Air Mediator Dispute, Plaintiff "informed A+ that it would not agree to a settlement . . . unless A+ agreed to form an additional contract to produce the Spotless Paw and the towels." *Id.* ¶ 71. A+'s former attorney, Moira Jaber,[1]

---

[1] The briefings contain different spellings of Ms. Jaber's name. The Court will use the spelling found consistently in the SAC.

then "agreed in writing, on behalf of A+, to have A+ complete manufacturing of the Spotless Swing and Spotless Paw, until all of the remaining raw materials apparently being stored at the Chinese factory were used up." *Id.* ¶ 62. Ms. Jaber encouraged Plaintiff to submit the Final Purchase Order, the contents of which Plaintiff agreed to pay for and A+ agreed to produce. *Id.* Plaintiff subsequently signed the settlement agreement for the Air Mediator Dispute. *Id.* ¶ 63. Ms. Lucena originally accepted the submitted the Final Purchase Order but purportedly attempted to reject it four days later. *Id.* ¶ 64. Plaintiff believes that the "agents of A+ expressly invited and accepted this latest purchase order to induce [Plaintiff] to agree [to] resolve the Air Mediator Dispute even though A+ had no present intent to perform this obligation so that the Air Mediator Dispute could be settled for less money." *Id.* ¶ 70. Plaintiff further alleges that "Mr. Schreiber engaged in conduct and communications demonstrating an intent to harm, retaliate against, and punish [Plaintiff]" during the negotiations for the Air Mediator Dispute. Specifically, the check Mr. Schreiber signed to settle the Air Mediator Dispute "was drawn on a non-existent bank account, and caused [Plaintiff's] owner, Scott Salzman[,] to suffer the embarrassment of having what was at that time a fraudulent check rejected by his bank." *Id.* ¶ 73.

The SAC also alleges that the material lost to waste during the production of the Final Purchase Order exceeded the loss that Plaintiff routinely accounts for in its orders. *Id.* ¶ 85. Additionally, Plaintiff has not received all the surplus material that was supposed to be used for the Final Purchase Order. *Id.* ¶ 82. Plaintiff received leftover material that fit into a 17.5" x 12.5" x 12" box but has not received the "hundreds of yards of leftover material" it should have. *Id.*

## PROCEDURAL BACKGROUND

Plaintiff initiated this lawsuit on September 22, 2020 in the District Court for the County of Boulder, State of Colorado. ECF 5. A+ was the only named defendant at that time. On

November 9, 2020, A+ removed the case to this Court. ECF 1. On November 12, 2020, the Court issued an order to show cause to A+ as to whether this Court had subject matter jurisdiction. ECF 7. After receiving A+'s response on November 16, 2020, ECF 10, the Court discharged the order to show cause, ECF 12. Contemporaneously with its response, A+ filed a motion to dismiss. ECF 11. On December 7, 2020, Plaintiff responded by filing a motion to exclude extrinsic evidence attached to the motion to dismiss (ECF 18) and a motion for extension of time to file a response to the motion (ECF 19). The Court heard oral argument on both motions on December 21, 2020. ECF 23. Following oral argument, the Court granted both motions and ordered Plaintiff to file a response on or before January 4, 2021. *Id.*

On January 4, 2021, Plaintiff attempted to file an amended complaint. ECF 24. However, on January 6, 2021, the Court struck that filing since the time to file an amended complaint as a matter of course had elapsed. ECF 25. The Court instructed Plaintiff to file a motion for leave to amend on or before January 8, 2021 and to comply with the Local Rules when doing so. *Id.* That same day, Plaintiff filed a notice of amended pleading in conformance with the Local Rules, ECF 26, but failed to file a motion for leave to amend. On January 7, 2021, in the interests of justice and judicial efficiency, the Court *sua sponte* gave Plaintiff leave to amend and directed Plaintiff to file a clean copy of its Amended Complaint on or before January 12, 2021. ECF 27. Because the Court accepted the amended pleading, the Court denied the pending motion to dismiss as moot. *Id.*

Plaintiff filed the clean copy on January 11, 2021. ECF 28. This new pleading named Mr. Schreiber as an additional defendant. *Id.* Following being granted an extension of time to answer or otherwise respond to the Amended Complaint, ECF 31, Defendants filed a motion to dismiss all of Plaintiff's claims on February 8, 2021, ECF 33. The Court granted this motion and dismissed

all of Plaintiff's claims. ECF 41. Plaintiff then filed its Second Amended Complaint on April 20, 2021, ECF 44. Defendants filed the current motion to dismiss on May 3, 2021. ECF 45.

## LEGAL STANDARDS

### I.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case

in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## II.     Dismissal Pursuant to Fed. R. Civ. P. 9(b)

Pursuant to Fed. R. Civ. P. 9(b), a more stringent pleading standard is mandated for certain claims, such as fraud or misrepresentation. "For any claim alleging fraud, the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Tech. Corp. Secs. Litig.*, 147 F.Supp.2d 1049, 1054 (D. Colo. 2001) (citing Fed. R. Civ. P. 9(b)). Thus, with regard to Plaintiff's claim for fraudulent misrepresentation, Plaintiff must plead "the who, what, when, where, and how of the alleged fraud" or in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006); *see also HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011) ("a plaintiff must meet the heightened pleading

requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice."). In this District, this is required regardless of whether the alleged fraud is an active representation or a passive omission. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F.Supp.2d 1103, 1114 (D. Colo. 2010).

## ANALYSIS

As mentioned earlier, Plaintiff has asserted a total of twelve claims. Defendants seek dismissal of Claims Two through Twelve, and dismissal of Claim One in regard to the Insufficient Quantity Alleged Breach. The Court will address the claims in the same order as in its previous order. After addressing the Motion, the Court will then consider the Motion to Vacate Scheduling Order and Stay Discovery

**I.      Motion to Dismiss**

      A.      Breach of Contract (First Claim for Relief – Against A+)

In its SAC, Plaintiff again alleges two separate breach of contract claims: the Insufficient Quantity Alleged Breach and the Final Purchase Order Alleged Breach. SAC ¶¶ 88–89. Defendants move to dismiss only the breach of contract claim for the Insufficient Quantity Alleged Breach. Mot. at 8 n.4. Therefore, this Court will only address that claim.

Defendants argue that it is implausible that a contract was formed because there was no meeting of the minds as to the essential terms of that contract. *Id*. at 9. Specifically, Defendants contend that the discrepancy in the amount of product that the parties allegedly contracted for compared to the amount of product that was actually produced shows that the parties lacked reasonable certainty as to what terms of the alleged contract were. *Id*. at 9–10. Thus, A+ could not be in breach of contract because there was no meeting of the minds to form a contract in the first place. *Id*. Plaintiff objects to this challenge, arguing that the SAC contains sufficient facts that plausibly demonstrate the existence and breach of a legally binding contract. Resp. at 5.

For a party to assert a breach of contract claim under Colorado law, it must show: (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Additionally, "the terms of a contract must be expressed with a reasonable certainty." *Am. Min. Co. v. Himrod-Kimball Mines Co.*, 235 P.2d 804, 807 (Colo. 1951). The Court must first determine whether Plaintiff has properly pleaded the existence of a contract. "The law is clear that although the parties may intend to enter into a contract, if essential terms are omitted from their agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result." *Ellis Canning Co. v. Bernstein*, 348 F. Supp. 1212, 1223 (D. Colo. 1972).

Plaintiff's breach of contract claim hinges on A+ not manufacturing an expected amount of product, making the quantity of product an essential term of the agreement. Plaintiff alleges that it "paid for sufficient materials to have 11,300 Black Spotless Swing, 1,000 Red Spotless Swing, 1,000 Green Spotless Swing, and 2,400 Spotless Paw manufactured by A+." SAC ¶ 33. Plaintiff further alleges that A+ "agreed to produce" these specified quantities of Spotless Swing and Spotless Paw "for an additional fee in addition to the cost of the raw materials," and that Plaintiff submitted purchase orders to A+ with the required fees for this production. *Id*. Because Plaintiff has presented facts that A+ agreed to produce a specified amount of a specified product, Plaintiff has plausibly alleged that there was a meeting of the minds on these terms, forming a contract.

Next, the Court must determine whether there are sufficient facts alleged to state a plausible claim that A+ failed to perform the contract. Plaintiff contends that A+ breached its contract by failing to produce the agreed upon quality and quantity of the product. *Id*. ¶ 88. Under Colorado law, performance of a contract is established through substantial performance. *Diodosio*, 841 P.2d

at 1058. Substantial performance occurs when a party "receive[s] substantially the benefit he expected" regardless of any "trifling" deviations from the agreed upon contract. *Id*. Plaintiff alleges that A+ did not manufacture the agreed upon quantity and instead only manufactured 4,566 Black Spotless Swing, 948 Red Spotless Swing, 1,026 Green Spotless Swing, and 1,152 Spotless Paw. SAC ¶ 37. Additionally, 576 of the Spotless Paw produced did not match the quality the parties purportedly contracted for. *Id*. ¶38.

From these allegations, A+ did not substantially perform the purported contact under Colorado law. This is because Plaintiff did not receive the benefit it expected from the production of the Spotless Swing and Spotless Paw. Specifically, Plaintiff paid for but did not receive the quantity of Spotless Swing or the quality of the Spotless Paw that it expected. Thus, Plaintiff has alleged facts to plausibly show that A+ did not substantially perform, such that Plaintiff has plausibly pleaded a claim for breach of contract. Defendants' Motion on this claim is therefore denied.

B.    Fraudulent Misrepresentation (Second Claim for Relief—Both Defendants)

Defendants argue for dismissal of Plaintiff's fraudulent misrepresentation claim on the ground that Plaintiff did not meet the heightened pleading standard of Rule 9(b). Mot. at 11. Primarily, Defendants contend that Plaintiff "has not alleged with particularity any facts regarding its alleged damages" and that the damages Plaintiff has alleged are not related to Defendants' purportedly false promise. *Id*.

Rule 9(b)'s heightened pleading standard requires the plaintiff to plead the fraud claim with particularity. *Woods*, 731 F. Supp. at 1114. "This requires the pleader to allege 'the who, what, when where, and how of the alleged fraud'- in other words, 'the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences

thereof.'" *Id.* (quoting *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006)).

Under Colorado law, a claim for fraudulent misrepresentation has five elements: (1) the defendant made a false representation of a material fact, (2) the one making the representation knew it was false, (3) the person to whom the representation was made was ignorant of the falsity, (4) the representation was made with the intention that it be acted upon, and (5) the reliance resulted in damage to the plaintiff. *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013). Further, "fraud . . . is not actionable where no damage is shown." *Slide Mines v. Denver Equip. Co.*, 148 P.2d 1009, 1011 (Colo. 1944). While a plaintiff need not demonstrate damages with absolute certainty, "damages cannot be based on mere speculation or conjecture." *W. Cities Broad., Inc. v. Schueller,* 849 P.2d 44, 48 (Colo. 1993) (quotations omitted).

Taking the allegations in the SAC as true, Ms. Jaber instructed Plaintiff to submit the Final Purchase Order and "expressly agree[d] in writing, on behalf of A+, to have A+ complete the manufacturing of the Spotless Swing and Spotless Paw, until all of the remaining raw materials . . . were used up." SAC ¶ 62. Plaintiff subsequently submitted the Final Purchase Order, which was accepted by Ms. Lucena. *Id.* ¶ 64. However, four days later, Ms. Lucena "unsuccessfully attempted to rescind" Defendants' acceptance of the Final Purchase Order, and Defendants never fulfilled the order. *Id.* Plaintiff alleges that Defendants' promise to fill the Final Purchase Order induced Plaintiff to sign the settlement agreement for the Air Mediator Dispute. *Id.* ¶ 63. Ultimately, Plaintiff contends that it would not have settled the Air Mediator Dispute but for Defendants' promise to fulfill the Final Purchase Order. *Id.* ¶ 69.

Plaintiff essentially asserts two categories of damages that resulted from Defendants' alleged fraudulent misrepresentation. First, Plaintiff alleges that, because of A+'s failure to fulfill

the order, Plaintiff lost its customers, business, and the potential profit from the Final Purchase Order because it could not find a replacement manufacturer. SAC ¶¶ 66–67. Second, Plaintiff alleges that it would not have settled the Air Mediator Dispute if Defendant had not promised to fill the Final Purchase Order, implying that it would have settled the Air Mediator Dispute for a greater amount but for A+'s promise to fulfill the Final Purchase Order. *Id*. ¶ 69.

As it did previously, the Court finds that the alleged damages are too speculative to support a claim of fraudulent misrepresentation. Even assuming Defendants had the present intent not to fulfill the Final Purchase Order, Plaintiff has not provided sufficient facts to show how its reliance on Defendants' promise resulted in the alleged damage of lost profit. More specifically, Plaintiff has not sufficiently explained how A+'s allegedly false promise to fulfill a single purchase order resulted in Plaintiff's loss of customers and a cratered business. With regard to the settlement agreement, it is mere speculation to ponder how Plaintiff and Defendants would have treated the Air Mediation Dispute differently but for Defendants' promise to fulfill the Final Purchase Order. In other words, maybe the parties could have settled for a greater amount or perhaps the parties never would have settled. In any event, there is no easily determinable way to ascertain damages arising from that event. Therefore, because the alleged damages are merely speculative, Plaintiff has not stated a plausible claim for relief, and Plaintiff's claim for fraudulent misrepresentation is dismissed.

C.     Unjust Enrichment (Third Claim for Relief – Against A+)

The claim of "unjust enrichment is a judicially-created remedy intended to prevent one party from unfairly benefitting to the detriment of another party." *Jorgensen v. Colo. Rural Props, LLC*, 226 P.3d 1255, 1258 (Colo. App. 2010). "The elements of unjust enrichment are: (1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust

for the defendant to retain the benefit without paying for it." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008).

As it did before, Plaintiff bases its unjust enrichment claim on A+'s failure to fulfill the Final Purchase Order. Specifically, in its SAC, Plaintiff alleges that A+ did not return the "the hundreds of yards of leftover materials from which the Final Purchase Order was to be made." SAC ¶ 82. Plaintiff contends that "it is highly unlikely that [A+] simply wasted [the] surplus materials," and lists "several possibilities" how A+ benefited from "misappropriat[ing]" the surplus materials. *Id.* ¶¶ 44–45. These allegations include using the material to fulfill orders for other customers, "instruct[ing] the Chinese manufacturer to convert, steal, or misappropriate" the surplus material, or "caus[ing] the materials to be sold to someone other than [Plaintiff]." *Id*. Defendants seek to dismiss Plaintiff's claim for unjust enrichment because the alleged benefits are speculative and Plaintiff has failed to show how A+ benefited from "producing more waste and a smaller quantity of products than [Plaintiff] had apparently expected." Mot. at 14.

Taking the allegations set forth in Plaintiff's SAC as true, the crux of Plaintiff's unjust enrichment claim is that Plaintiff paid A+ for material that Plaintiff never received – either in the form of a finished product or surplus material. In its previous order, the Court dismissed Plaintiff's unjust enrichment claim because Plaintiff had not plausibly explained how A+ received a benefit from surplus material that was lost to waste. ECF 41 at 15–16. In its Amended Complaint, Plaintiff only alleged that it paid for "sufficient materials to produce" the specified quantity of Spotless Swing and Spotless Paw. ECF 21 ¶¶ 29, 38. Plaintiff did not allege in its previous complaint that it paid A+ to produce the specified amount of product or that A+ agreed to produce that product. The Court now finds that Plaintiff's SAC contains new factual allegations plausibly showing that A+ did receive a benefit.

In its SAC, Plaintiff provides new details about the alleged surplus material. Notably, Plaintiff has alleged that it paid for and A+ agreed to produce a specified quantity of product. SAC ¶ 33. Additionally, Plaintiff contends that it had accounted for the amount of material that was going to be lost during the manufacturing process, but the amount of material that was ultimately lost was more than usual. SAC ¶¶ 83–85. Plaintiff further alleges that A+ did not return the "hundreds of yards of leftover materials" for which Plaintiff paid. *Id* ¶82. The Court finds that these new allegations plausibly show that Plaintiff paid A+ for material that Plaintiff never received and are therefore sufficient to plausibly state a claim that A+ benefited at the expense of Plaintiff. As a result of these new allegations, Defendants' motion to dismiss Plaintiff's unjust enrichment claim is denied.

D.     Promissory Estoppel (Fifth Claim for Relief – Against A+)

"Promissory estoppel is an equitable doctrine, providing a remedy for individuals who rely to their detriment, under certain circumstances, on promises, despite the absence of any mutual agreement by the parties on all essential terms of a contract." *Schwartz v. Bank of Am., N.A.*, No. 10-cv-01225-WYD-MJW, 2011 WL 1135001, at *8 (D. Colo. Mar. 28, 2011). To state a claim for promissory estoppel under Colorado law, the plaintiff must demonstrate "(1) a promise, (2) that the promisor should have expected would induce action or forbearance by the promisee, (3) that the promisee did, in fact, reasonably rely on to the promisee's detriment, and (4) that must be enforced to prevent injustice." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016). "[T]o be entitled to relief, a party must show that, to its detriment, *it changed its position* in justifiable reliance on the promise of another." *McKinney v. OneWest Bank, FSB*, No. 12-cv-02645-WJM-BNB, 2013 WL 3381361, at *3 (D. Colo. July 8, 2013) (quotations omitted). A change in position can result either from taking action or refraining from taking action. *See id.*

Plaintiff's promissory estoppel claim concerns the Final Purchase Order. SAC ¶ 107. Plaintiff alleges that Defendant's agreement to fulfill the Final Purchase Order induced Plaintiff to "forego[] efforts to obtain a replacement manufacturer" and that this forbearance ultimately lead to Plaintiff's detriment of losing its business. SAC ¶¶ 67–69, 108. Defendants argue that Plaintiff has not plausibly pleaded the third element of whether Plaintiff changed its position to its detriment. Specifically, Defendants contend that it is implausible that Plaintiff's business could have cratered as a result of Plaintiff not seeking a replacement manufacturer during the four-day period between when the Final Purchase Order was accepted and when it was rejected. Mot. at 15. The Court previously dismissed Plaintiff's promissory estoppel claim because Plaintiff did not plausibly show how it was harmed by A+'s failure to fill the Final Purchase Order. ECF 41 at 17. The Court now finds that Plaintiff's SAC contains new factual allegations that plausibly connect Plaintiff's alleged damages to its reliance on A+'s promise to fill the Final Purchase Order.

Plaintiff's change in position was that it refrained from finding a replacement manufacturer. The SAC contains new allegations that the detriment that resulted from this forbearance was that Plaintiff lost its inventory, customers, and "good will." SAC ¶ 68. The Court finds that these new factual allegations sufficiently tie the alleged damages of lost inventory, customers, and "good will" to Plaintiff's change in position. As such, Plaintiff has stated a plausible claim for promissory estoppel as it relates to the Final Purchase Order, and Defendant's motion to dismiss Plaintiff's claim for promissory estoppel is denied.

E.  <u>Express and Constructive Bailment (Fourth Claim for Relief) and Vicarious Liability Claims (Sixth Through Ninth Claims for Relief – Against A+)</u>

Plaintiff makes a single claim for express and constructive bailment and four separate vicarious liability claims against A+. Defendants seek dismissal of all claims because these claims are theories of liability and cannot be asserted as stand-alone claims. Mot. at 15–16. The Court

previously dismissed these claims with prejudice, finding that they could not be raised as stand-alone claims. The Court did not preclude Plaintiff from reraising these theories of liability altogether but simply dismissed them as claims in their own right.

1. Bailment

First, Defendants move to dismiss the claim of express and constructive bailment on the ground that "[Plaintiff] failed to tie [the] alleged bailment relationship to any actionable claim for relief." Mot. at 6. Bailment refers to the relationship between individuals that may give rise to a duty of care. *See Christensen v. Hoover*, 643 P.2d 525, 529 (Colo. 1982). "A bailment is a delivery of personal property by one person to another in trust for a specific purpose, with an express or implied contract that the property will be returned or accounted for when the specific purpose has been accomplished or when the bailor reclaims the property." *Id.* at 528–29. Additionally, "[w]here goods have been damaged or destroyed while in the possession of a bailee, the bailor may bring a claim for breach of contract *or* may bring a tort claim (for negligence or, perhaps, for conversion)." *Foster v. Bd. of Governors of the Colo. State Univ. Sys. by and on behalf of Colo. State. Univ.*, 342 P.3d 497, 503 (Colo. App. 2014) (emphasis in original). In its previous order dismissing Plaintiff's Amended Complaint, the Court noted that a claim for express and constructive bailment is not an "independent claim" and "must sound in contract or in tort." ECF 41 at 19–20.

In its Response, Plaintiff asserts three possible ways in which it has sufficiently alleged that there was an underlying duty of care based in contract or tort. Resp. at 15–16. First, Plaintiff contends that it sufficiently pleaded its bailment claim because it alleged "how an A+ employee had promised to work with quality control . . . to ensure that Plaintiff's goods and materials would be properly cared for." Resp. at 15. Second, Plaintiff contends that the previous course of dealing between Plaintiff and Defendant "induc[ed] reliance in Plaintiff that the Chinese factory would

continue to reasonably protect [Plaintiff's] surplus materials." *Id.* at 16. Finally, Plaintiff contends its bailment claim should survive the Motion because it alleged how the amount of misappropriated material was "hundreds of times more than the amount of wastage previously encountered in its dealings with the Chinese factory and A+." *Id.*

Notably, Plaintiff did not make a single adjustment to its "Fourth Claim for Relief – Express and Constructive Bailment – Against A+." *Compare* SAC ¶¶ 101–05, *with* Am. Compl. ¶¶ 84–88. The Court also notes that Plaintiff has not cited a single case in support of its argument in the Response. Instead, Plaintiff relies exclusively on the new allegations added to the SAC. But the new allegations do not remedy the prior reasons explained by the Court in dismissing the original "claim" for express or constructive bailment. It is still not clear that Plaintiff is attempting to bring a claim for breach of contract or "a tort claim (for negligence or, perhaps, for conversion)." *Foster*, 342 P.3d at 503. From the face of the SAC, it appears that Plaintiff is attempting, again, to bring a claim for express and constructive bailment. Plaintiff's Response confirms this. Resp. at 15 (stating that "[t]he Court directed further clarification showing the existence of an underlying contractual or tort duty" rather than asserting a claim sounding in tort or contract). So, to the extent Plaintiff is reraising an independent claim for bailment, that claim is again dismissed.

### 2. Vicarious Liability

Although the Court previously dismissed the vicarious liability claims with prejudice, Plaintiff has reraised them in the SAC. As before, Plaintiff has brought four vicarious liability claims: two under the doctrine of respondent superior (Sixth and Ninth Claims for Relief) and two under the notions of actual and apparent authority (Seventh and Eighth Claims for Relief). Vicarious liability claims under the doctrine of *respondeat superior* are not independent claims. *Baker v. Baxa Corp.*, 2011 WL 650002, at *1 (D. Colo. Feb. 11, 2011) ("The doctrine of

*respondeat superior* is not a substantive claim for which relief can be afforded; it is a legal theory by which a party who has not committed a substantive legal wrong can be held liable for a legal wrong committed by another."); *Grease Monkey Intern., Inc. v. Montoya*, 904 P.2d 468, 473 (Colo. 1995) ("A master may also be liable for *tortious* conduct by a servant, as he would be for the conduct of any agent, whether servant or not.") (emphasis added). Further, "[Plaintiff] must establish all of the elements of one of [its] other substantive tort claims before [it] contends that [Defendant] would be liable . . . under *respondeat superior*." *Baker*, 2011 WL 650002, at *1.

The only amendment Plaintiff made to any of its vicarious liability claims from its previous complaint was adding the phrase "to all claims for relief" at the end of every claim. Plaintiff admits that these "claims" are theories of liability which were included "to show that they are vehicles by which Plaintiff is asserting A+ is liable for the acts of its employees, agents, and the Chinese factory, rather than wholly separate claims for relief." Resp. at 16. But even considering that Plaintiff may no longer be asserting these as separate claims, theories of vicarious liability must still attach to underlying claims. More specifically, vicarious liability is meant to hold a principal liable for the *tortious* actions of its agent. RESTATEMENT (THIRD) OF AGENCY § 7.03(2) (no vicarious liability of principal without agent's "tortious" conduct); 74 Am.Jur.2d Torts § 60 (2012) ("[V]icarious liability assigns legal liability to a party who is blameless in fact based on the tortious acts of another."); 3 Am.Jur.2d Agency § 315 (2013) ("A plaintiff may sue a principal based on its vicarious liability for the tortious conduct of its agents . . ."). Because no tort claim survives the Motion, there is no basis to assert vicarious liability. As such, Plaintiff's vicarious liability claims must again be dismissed.

F.     Negligent Supervision and Retention (Tenth Claim for Relief – Against A+)

Plaintiff's Tenth Claim for Relief is for negligent supervision and retention. SAC ¶¶ 129–34. Specifically, Plaintiff contends that A+ "was aware, or should have been aware of facts and circumstances indicating that the Chinese factory needed to be closely monitored." *Id.* ¶ 133. Defendants move to dismiss Plaintiff's negligent supervision claim on the ground that "the SAC contains no new factual allegations that plausibly give rise to the existence of an employment or agency relationship between A+ and the Chinese manufacturer." Mot. at 7.

As the Court noted in its previous order dismissing Plaintiff's Amended Complaint, and as Plaintiff conceded in prior briefings, "Colorado law requires there to be an existing employment or agency relationship in order to state a claim for negligent supervision." *Kahland v. Villarreal*, 155 P.3d 491, 493 (Colo. App. 2006) ("[A] claim for negligent hiring, training, and supervision is based on the *employer's* failure to discover that the *employee* created an undue risk of harm to others.") (emphasis added); *see* ECF 40 at 20; ECF 41 at 20–21. Plaintiff's SAC contains no factual allegations that an employee or agency relationship existed between A+ and the Chinese manufacturer. Plaintiff even acknowledges this by stating that "[w]hat has been alleged are facts showing that A+ hid the identity of the Chinese factory from Plaintiff despite request, utilized its services to produce Plaintiff's products, and blamed that factory for mistakes that were made." Resp. at 17. None of these allegations support the existence of an employee or agency relationship as required by Colorado law. As such, Plaintiff's claim for negligent supervision is dismissed again.

G.     Wrongful Interference with Prospective Economic Advantage (Eleventh Claim for Relief—Both Defendants)

Defendants move to dismiss Plaintiff's claim for wrongful interference with prospective economic advantage because Plaintiff has failed to "allege any *particular* third parties with whom

a prospective economic advantage would result." Mot. at 16. (emphasis in original). The elements of a claim for tortious interference are: (1) that the defendant induced a third-party to refuse to enter into or refuse to continue a contractual relationship with the plaintiff; (2) that the defendant did so intentionally; and (3) that the defendant used improper means to do so. *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 2013 WL 1231875, at *2 (D. Colo. Mar. 27, 2013) (citing *MDM Group Ass'n Inc.v. CX Reinsurance Co.*, 165 P.2d 882, 886 (Colo. App. 2007)). Further, Plaintiff must identify a "particular third-party with which it had existing or prospective business relationships." *Cunningham Lindsey U.S. Inc. v. Crawford & Co.*, No. 17-cv-03041-CMA-KLM, 2018 WL 6307865, at * 6 (D. Colo. Dec. 3, 2018), *report and recommendation adopted*, 2019 WL 120762 (D. Colo. Jan. 7, 2019).  In *Cunningham*, the Court found that the alleged third-party of "existing and prospective business relationships" was not particular enough for the purpose of a tortious interference claim. *Id.* (internal quotations omitted).

Plaintiff's SAC alleges that the third parties with which it had prospective business relationships with were "repeat and prior customers, as well as new customers, who formed a class of scientifically and mathematically ascertainable future purchasers, and who were more probably than not likely to continue and create ongoing commercial relationships with [Plaintiff]." SAC ¶ 138. The terms "prior customers" and "new customers" are as equally vague as the term "existing and prospective business relationships" that was too vague to sustain a claim for wrongful interference with prospective economic advantage in *Cunningham*. Further, the Court finds that adding the language of "a class of scientifically and mathematically ascertainable future" does not make the alleged third-party less vague.

Thus, similar to *Cunningham*, Plaintiff's Eleventh Claim is dismissed because the alleged third parties of "prior" and "new customers" are not particular enough to sustain a claim for tortious interference under Colorado law.

       H.      <u>Civil Theft (Twelfth Claim for Relief – Against A+)</u>

"To state a claim for civil theft, a plaintiff must allege the elements of criminal theft: that the defendant knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception, and acts intentionally or knowingly in ways that deprive the other person of the property permanently." *Seale v. Peacock*, No. 19-cv-03559-KMT, 2020 WL 5076749, at *2 (D. Colo. Aug. 27, 2020) (quoting *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016)) (quotation marks omitted). Importantly, "civil theft, like criminal theft, requires the *specific intent* of the defendant to *permanently* deprive the owner of the benefit of the property." *Id.* (emphasis added). Defendants seek to dismiss Plaintiff's civil theft claim on the ground that Plaintiff's allegations are "conclusory" and do not plausibly show that A+ intended to permanently deprive Plaintiff of its surplus material. Mot. at 17.

The Court agrees with Defendants. The SAC does not allege facts plausibly stating that A+ intended to permanently deprive Plaintiff of the surplus material. In its Response, Plaintiff refers to its prior business dealings with A+ as evidence that A+ intended to permanently deprive Plaintiff of the surplus material. Resp. at 13. However, Plaintiff does not explain nor provide any authority to explain how prior business dealings show an intent to permanently deprive a party of its property. Additionally, Plaintiff references Mr. Schreiber's "repeated threats to do harm to Plaintiff" and his "anger and motive" as evidence of intent. Resp. at 14. However, Plaintiff's civil theft claim is against A+, not Mr. Schreiber. SAC ¶¶ 140–43. Therefore, Plaintiff's civil theft claim is dismissed because "Plaintiff has not plausibly alleged any facts to support an inference that [A+]

intended to *permanently* deprive Plaintiff." *Seale*, 2020 WL 507674, at *2–3 (emphasis in original).

> I.      Dismissal with Prejudice

Tenth Circuit precedent holds that "dismissal with prejudice is proper for failure to state a claim when 'it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him the opportunity to amend.'" *Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)). Additionally, pursuant to Fed. R. Civ. P. 15(a), "[t]he grant or denial of an opportunity to amend is within the discretion of the Court." *Maloney v. City of Pueblo*, 323 F.R.D. 358, 360 (D. Colo. 2018). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Maloney*, 232 F.R.D. at 360 (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)). As relevant here, it is within the court's discretion to deny leave to amend after a plaintiff has already been "granted one opportunity to amend [its] complaint." *Bekkem v. Wilkie*, 915 F.3d 1258, 1275–76 (10th Cir. 2019).

In this case, Plaintiff has already amended twice in response to Defendants' motions to dismiss. Despite getting a third bite of the apple, Plaintiff has failed to adequately plead certain claims. As a result of Plaintiff's failure to cure these deficiencies through its prior amendments, the Court does not grant Plaintiff leave to amend Claims Two, Four, Six, Seven, Eight, Nine, Ten, Eleven, and Twelve.

## II.      Motion to Vacate Scheduling Order and Stay Discovery

Defendants also move the Court to vacate the deadlines in the Scheduling Order and to stay discovery until the Court issues a ruling on the Motion. Plaintiff does not oppose vacating

deadliness but does oppose a stay. Because the Court has now issued an Order on the Motion, Defendants' request to stay is moot. Since the request to vacate discovery deadlines is unopposed, the Court will grant that request. All discovery deadlines in the Scheduling Order (ECF 37) are vacated, to be reset at a later date.

**<u>CONCLUSION</u>**

Accordingly, Defendants' Motion [filed May 3, 2021; ECF 33] is **granted** as it relates to Plaintiff's Second, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Claims for Relief. Defendants' Motion is **denied** as it relates to Plaintiff's First, Third, and Fifth Claims for Relief. Additionally, the Motion to Vacate Scheduling Order and Stay Discovery [filed June 14, 2021; ECF 49] is **granted in part** and **denied in part as moot** as stated in this Order.

Entered this 13th day of July, 2021, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge